Good morning, your honors. My name is Jerome Kuh. I'm a federal public defender in the Western District of Washington, and I represent Paul Reid, the appellant in this case. The police violated Mr. Reid's right to be secure from unreasonable and warrantless searches and seizures when they seized and then searched him when he was parked about three car lengths into a training area on the Fort Lewis Military Base. It was unreasonable for the police officer to conclude Mr. Reid violated 18 U.S.C. 1382, which is sometimes known as a trespass statute, because the officer could not reasonably believe Mr. Reid had noticed he was on the base. We start with a presumption, as we do in all warrantless search cases, seizure cases, with the assumption that the search and seizure were unreasonable. It is the government's burden to show that the warrantless search and seizure falls into one of the limited exceptions carved out of the warrant requirement. All right, and what is my standard of review in this particular matter? Well, I believe that it was a suppression motion, so I think as to the law, you're sitting de novo. I believe to the findings of fact, I believe that's substantial deference. It's clear error. Clear error? That's correct. So what are the facts that the magistrate found? Well, the critical facts that the magistrate found, and these are contained in the record, was that he was on, Mr. Reid was on Fort Lewis. That was one fact that he found. The dirt road where the car was stopped was actually in the training area on Fort Lewis. That's correct. That's a fact. That was a fact that the court found. Right, whatever. What else did he find? He also found that, as he said, the training area was on Fort Lewis. He found, based on the totality of circumstances, and included in those circumstances were the fact that the officer determined after the stop, after he had stopped Mr. Reid, that he had no decal on his car. He had no decals on the car. That's right, he had no decals. All right, there's another fact. What other facts? That he also determined that, and this was from the officer's testimony of what Mr. Reid said, which was uncontroverted, that Mr. Reid had no permission to be on Fort Lewis. Right. Asked about his ID. He had no permission to be there. That's correct. Those were all the facts. What else? He also found, and I don't know exactly what this meant, but that based on Mr. Reid's demeanor, and again this was information that was gained after the stop and after Mr. Reid's detention on the side of the road, that Well, we're really talking about, you're not challenging the stop itself. We're only talking about the probable cause to arrest. So I'm talking about what facts do we have, because that's for clear air. That's correct. And I'm going to apply the law to that. As you must, Your Honor. And as I understand it, he also found that the guy was there not for a proper purpose. Your Honor, it was unclear.  And there's no evidence in this case, there was absolutely no evidence then that that was an unpermissible purpose. All right. So based on those facts, no decals, no permission to be there, not on a public road, maybe even 25 feet from the public road, and a dirt road which was on a military installation, you're saying there's no probable cause to arrest on the statute in question. That's correct. That is what I'm saying. What does the officer need to have? Does he need to have all the facts to convict? Absolutely not. That's very clear from the law. He doesn't need to have all the facts to convict, does he? No, he does not need to have. He just has to have knowledge or reasonably prudent information sufficient to lead him to the idea that an offense has been or is being committed. Isn't that correct? I believe that is correct. And we believe and we argue that he did not have a basis for that. What's the key to that offense? What's the key to the offense that he was arrested for? The key is an entry onto a military base. We continue to contend that it's a knowing entry onto the military base. In other words, he has to have knowledge? I believe he has to have, I believe the government has to. He has to know that he's violating? No, he does not have to know. What does he have to know? The government has to have made an effort to provide an ability for him to know that he has entered onto the military base. Can't the officer infer from his location that he had noticed that he was on a property, in combination at least with his own statement, that I don't have any military affiliation or Fort Lewis training area access pass, which I would think any reasonable officer would take as a knowledgeable admission? First of all, I would say that if you read the record, I think it's the officer that told Mr. Reed he was on the military base. Well, the officer said, do you have any right to be on there? And the officer, without contradiction in the record, said, when asked if he were authorized to be on Fort Lewis property, quote, I don't have any military affiliation or Fort Lewis training area access pass, which would strike me as being an unusual admission, unless Reed knew that he was supposed to. And I think it was in response to the question. I think he was responding exactly to the question that the officer asked him. But my ‑‑ unless I'm mistaken, there was no ‑‑ Reed didn't testify, and there's no dispute that that's what ‑‑ I mean, the officer said he said. That's correct. However ‑‑ Okay. So why can't the officer infer reasonably from that plus where his car was located that he was sufficiently aware that he shouldn't have been there? Well, I don't think that the answer shows any awareness at all. Again, because I believe that it's directly responsive to the question, do you have any ‑‑ do you have a right to be on a military base? And he replied no. Your position is he did not know he was on a military base. No, I believe he had absolutely ‑‑ he did not know. He didn't know where he was. He had no reason. He was on a dirt road, but he didn't know that the dirt road was on a military reservation. He was ‑‑ There's no evidence of that in this record. There's no evidence that he knew at all that he was on the military base. Well, that ‑‑ But that's a merits‑based question, isn't it? I mean, that's the point I'm getting at. You don't have to show all of the elements sufficient beyond a reasonable doubt. You just have to show that there is a basis upon which the officer could reasonably suspect that he knew he wasn't supposed to be there. And our argument is that the officer knew that there was no way for Mr. Reed to know that he was on a military base in the area. Even though a double‑sided sign was three car lengths away. A double‑sided sign that he had never passed. And even if that ‑‑ Well, we don't know that. I mean, that's the whole point. That goes to the merits. Why couldn't the officer reasonably conclude that given his proximity to that double‑sided sign and his admission that there was probable cause to believe he wasn't supposed to be there? And, Your Honor, the question, the answer, I believe, is that he hadn't ‑‑ that the officer had no reason to believe that he had passed the sign, that there was no evidence that he passed the sign. Had he seen the sign facing him, he would not have known that he was on Fort Lewis at the time he was stopped because he had, you know, even under the best light of the government, he had not passed that sign and was before it. There was no evidence at all that he had passed the sign. Just one final question. Is it your position that the officer, in order to have probable cause, must have seen Reed see the sign? Absolutely not. What the officer knew was that there was no sign. The officer knew that. The officer knew there was no sign between the boundary in the state of Washington and where Mr. Reed was stopped. There was absolutely no sign, and that was uncontroverted testimony from the officer and the government concedes that in its brief. If that's where ‑‑ the direction from which he came. Exactly. And, Your Honor, I'm left with a record that I ‑‑ that there is, and I believe that it is pretty clear that there's no evidence for the judge to conclude that he had passed the sign. The fact that there were ‑‑ the fact that there were signs ten miles beyond, along those roads. Is there evidence for a Terry stop? I believe there was specifically not evidence for the Terry stop because, again, the officer knew that there was no ‑‑ No probable cause. I move to another point. Is there evidence? Wouldn't a reasonable officer be allowed to make a Terry stop in the situation that has been described here? I don't believe so because the officer knew that there was no signage between where he was and the ‑‑ between the boundary and where he was. Just because the guy was backing up toward another road, you're suggesting that? No, I believe because of the direction the car was pointed in. I mean, all you're suggesting is because the guy was backing up toward the road where there is no sign, even though there's an obvious sign where he could see that he had no probable ‑‑ he had now, we're not even at probable cause, we're at reasonable suspicion? And, Your Honor, I believe that, with all due respect, you've misstated the part of the evidence here. There was no evidence that there was a sign he could see. There was evidence of a sign about 75 feet away. There was no testimony at all that he could read the sign from there. It's a heavily wooded area. There was no evidence at all. Is there evidence that the officer asked him if he knew? If he knew that he was ‑‑ I don't believe that in the record at this point there is. There's nothing in there? I don't believe there is. I don't believe that there is. Thank you. Good morning, Your Honors. May it please the Court, Stephen Misada on behalf of the United States of America. You know, this case is about the probable cause standard, as Your Honors have fleshed out. So the question here is whether Officer Manuel Melendez, an officer with 17 years of prior experience, could conclude whether it was reasonable for him to conclude that under the totality of the circumstances, there was a fair probability that a crime had been committed. Not whether he was certain that a crime had been committed or whether there was proof beyond a reasonable doubt. Let's go to the statute itself for a minute, the trespass law. Let's go back a ways. Isn't it the law that you are not a trespasser unless you know that you should not be on the property? Respectfully, no, Your Honor. I think that's been lost in defense counsel's briefing. The statute criminalizes entry for any unlawful purpose. And again, this court on appeal can affirm on any basis supported by the record. Only if the government was to pursue a conviction of the statute based on the unlawful entry itself, then the government would be forced to prove at trial knowledge that the defendant knew that he was in an unauthorized area. So no, Your Honor. It does not require knowledge. For this purpose. For this purpose. And so to follow up on your question, whether a terrorist stop was appropriate, Your Honor, there was a vehicle backing down a dirt road on a military facility. You haven't argued terrorist stop, though. Absolutely not, Your Honor. That's not an alternative that you raised. Absolutely not, Your Honor. Absolutely not. But just to follow up on the court's question, an individual's backing up down a dirt road on a military facility, and the question is whether there's reasonable suspicion to stop that vehicle. Without question, Your Honor. Following that stop, the officer in this case noted that there was no decals on the vehicle. He stopped that vehicle. He approached the vehicle, and he recognizes the smell of burnt methamphetamines emanating from the vehicle. In the back seat is the defendant's one-year-old daughter. Now, as Your Honor, Judge Reimer noted, the officer, Melendez, then questioned him. You know, what are you doing on Fort Lewis property? Now, the officer can make an inference from his response. He didn't say, shoot, I didn't know that this was a military facility, which is what I think a reasonable person would respond to if they were stopped on a military base, and they honestly didn't know. But he didn't. He said, I was peeing in the woods, and then I don't have any authorization to be here. Implicitly in that statement is his recognition that, hey, you know, I knew I wasn't supposed to be here. Also, Your Honor, just to clarify the record, I believe defense counsel said that the Azusa Trooper that the defendant was driving in this case was seen approximately three car lengths from off of Yelm Highway. My reading of the record, and, again, I was not the Assistant United States Attorney who was present at the evidentiary hearing, was that the vehicle was approximately halfway down the dirt road, backing up, and the magistrate, Judge Sushita, so found. The court also found that that distance, I believe, was approximately 75 feet from Yelm Highway. I also just wanted to point out that, again, Your Honor, as the bench concluded, there is no evidence of where Mr. Reed entered that dirt road from. In fact, he was seen coming away from Highway 510 where three, perhaps four signs, if you count the two-sided sign, is one of two signs. So he was within 75 feet of a sign that said, you are not allowed to be here. That's approximately the length of this courtroom. That's not that far. He was within 300 feet of three signs, And the question is whether Officer Melendez had a sound basis to conclude that a crime had been committed here. If we are going to rely on whether the defendant here had actual knowledge, I think there is more than probable cause to believe, to infer that at the initial probable cause stage, Your Honors. So unless the court has any further questions, the government will rest on its briefing. Thank you for your argument. Your Honor, I believe that when I was speaking before, I exhausted my time. I would ask Lee to respond extremely briefly on two things that he brought up. I understood you had a minute and 43 to go. Okay, well then I'll use my minute and 43. Oh, that's over. Okay. She didn't show me it was over. I'll give you a minute. That's grace. Thank you very much, Your Honor. From Idaho. Grace. So far, I haven't proven that I deserve that grace with you. Oh, I don't know. Your Honor, all I would say is that the government has said that under the statute, they don't have to prove knowledge. I don't think there's any authority for that. They don't cite any authority for that. And I would only offer that, remember the statute is for entry for an illegal purpose. It's not the usual trespass statute, not a common law trespass statute. And the underlying law violation, for instance, say possession of methamphetamine, they would not have to prove knowledge. But this statute specifically says that the entry has to be illegal, and I believe that that takes it out of the terrain where you don't have to prove knowledge and places it in the territory that you do have to prove knowledge. They offer no authority. To the contrary, the only authority they offer is that the cases on where illegal reentry is the purpose, that the courts have required knowledge. But there's no case law that I could find on the other part of this law at all. Thank you. Thank you. Your 12 minutes over your grace. We'll submit this case. Case 09-30394 is submitted.
judges: Hart, Rymer, Smith N. R.